WILLIAM HOPKINS, plaintiff in error, vs. LAZARUS TILMAN, defendant in error.

When the question is one of fact purely—the soundness or unsoundness of the property at the time of sale—and the case has been fairly submitted to the jury, their verdict will not be disturbed.

Action for breach of warranty, from Merriwether county, tried before Judge BULL, at August Term, 1858.

This was an action by William Hopkins against Lazarus Tilman, to recover damages for breach of the warranty of soundness of a negro woman slave, sold by Tilman to plaintiff.

The defendant pleaded the general issue.

The plaintiff offered and read in evidence the bill of sale, which was as follows:

"Received, December 31st, 1853, of William Hopkins six hundred and fifty dollars in full payment for a negro woman named Catharine about seventeen years old, the title to which negro I bind myself, my heirs and executors, and warrant to be sound except being deaf and a small old hurt on the hand. I warrant to be sound in body and mind.

(Signed,)                                LAZARUS TILMAN.

*Walton Ector*, For the plaintiff, testified that he knew the girl when about 13 years old; she was sold as the property of M. D. Ector, considered the girl an inferior negro but healthy, she was a dull negro.

*Dr. Joseph T. Reese,* examined by commission, testified, that he practiced medicine in the family of defendant, and was called to see a negro girl named Catharine, did not think she was afflicted with any disease when he saw her, was called to see her in the Spring or Summer of 1853 or 1854, as well as remembered; thought the girl was practicing a deception on the family of defendant and treated her accordingly. It was the only time he ever saw her; has no idea of her worth. She was lying quietly on the bed in a natural position and condition as far as witness could judge.

*Dr. E. C. Hood,* testified, that he was a physcian, and in the spring of 1854, was called to see the woman and found her in a stupid, comatose condition, with laborious respiration; pupils of the eye dilated; after watching her symptoms about an hour and using means to restore her to consciousness, she became rational or partially so, and he gave her a cathartic and left her. Judging from the symptoms and the history of the case had little or no doubt but that the negro had had a fit? Does not know whether the case is of long or short standing. *Cross examined.*—The causes of fits are very numerous, and the cause is frequently so obscure that we cannot detect it; is not prepared to say as to the curability or durability of this case; has seen the negro only a few times.

*Milton and Zimmerman Hopkins,* examined by commission, for plaintiff (to 1st set of interrogatories) say they know the woman Catharine bought by plaintiff of defendant. She was not in good health at the time of purchase, did not understand the nature of her disease at that time. . She had her first *fit,* after we knew her, about the last of February 1854, since that time she has had four other fits, she also has spells of sickness once a month.

*Cross examined.*—Are not physicians; the disease remains about the same as it was when they first knew her; do not consider the girl worth the money that plaintiff paid for her.

To 2d interrogatories January, 1857. They knew the girl since plaintiff bought her from defendant—has had fits ever since; she has about two fits every month, and is usually confined by sickness about five days in every month ; suppose her sickness caused by the fits, have been sworn before in this case ; the negro's health has gradually become worse since they were sworn before in this case, her fits are more severe and her sickness more protracted, her mind also is more impaired.

*Cross examined.*—They are the sons of plaintiff.

*William Hood,* examined by commission for plaintiff, testified that he knew the girl Catharine; plaintiff sent for him in May 1854, he went over and went into the field, where plaintiff and the girl were. She was lying on the ground speechless, he supposed with a fit, and in 15 or 20 minutes he assisted plaintiff in removing her to the house, without any effort on her part, and laid her on a pallet, and in a few minutes left.

*Cross examined.*—Is not a physician and does not know what plaintiff gave for her.

*Calvin Spence,* proves a tender of the negro to defendant, and that plaintiff at the same time offered defendant $75, to take her back, which he refused to do. This was the last of May 1854.

*Cross examined.* Was present when plaintiff tendered the negro back, as he considered her unsound—having fits, to which defendant replied " she did not have fits" and he refused to take her back.

The plaintiff closed, and defendant introduced no testimony. The jury returned a verdict for the defendant: plaintiff moved for a new trial on the ground that the verdict was contrary to law and evidence.

The Court overruled the motion for new trial, and plaintiff excepts.

HALL; and RAMSEY, for plaintiff in error.

B, H. HILL, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

The only question in this case is was the verdict of the jury, so strongly and decidedly against the weight of evidence as to constrain the Superior Court to grant a new trial, and this Court to reverse its decision in refusing to order a new trial, as a flagrant abuse of its discretion? We think not.

It does not satisfactorily appear, that the unsoundness of the negro existed at the time of sale. It *may* have been brought on afterwards. Had the verdict been the other way, we should not have felt compelled perhaps to disturb it. Neither do we as it is. The case was fairly submitted, and the jury were fully competent to weigh the testimony, as they doubtlessly did.

Judgment affirmed.